In the Matter of the Application of THERON E. BASTIAN and Others, Constituting the Monroe County Park Commission, to Acquire Title to Lands of HIRAM W. WRIGHT and Others.

County Court, Monroe County, June 6, 1935.

*Marvin R. Dye, County Attorney* [*Henry S. McGonegal* of counsel], for the plaintiff and the motion.

*Easton & Witmer* [*G. Robert Witmer* and *Andrew R. Sutherland* of counsel], for the landowner.

LYNN, J. This proceeding was instituted in November, 1931, to acquire the property of the defendants for county park purposes.

The *lis pendens* was filed on the seventeenth of that month. After some adjournments, commissioners were named by the court.

The written order was apparently neglected, and the parties prepared for the hearing before the commissioners. The hearing was not brought on, however, and in July, 1933, the owner moved the court for an order setting the date for the hearing. This motion resulted instead in an application by the petitioner to discontinue the proceeding under section 18 of the Condemnation Law. No serious opposition was made to this application, but both sides presented affidavits bearing upon the question of what terms should be imposed. Upon these affidavits, the court made an order (156 Misc. 168) permitting the discontinuance upon payment to the landowners of the sum of $5,150. From this order an appeal was taken to the Appellate Division, Fourth Department, where the order was reversed, with the following memorandum: " Order, so far as appealed from reversed on the facts and the matter remitted to the County Court to take oral proofs as to the respondents' expenses and damages to be imposed as terms." (241 App. Div. 906.)

Pursuant to this order, oral evidence has been taken, with the result that this court is of the opinion that the terms previously imposed were reasonable. To be sure, the evidence of the experts called on the subject of the value of the legal services indicates that those services were of a value somewhat exceeding the amount of $2,500, the amount allowed in the previous order. However, that was the amount of the bill rendered by counsel to the landowner, and, clearly, counsel could charge less than the reasonable value for their services if they saw fit, and, in any event, it is all that the landowner was asked to pay. In addition, $150 was allowed as disbursements by counsel, and this has been amply proved.

We pass then to the $2,500 allowed to the landowner for other damages suffered by him because of this proceeding. As stated by the court in its prior opinion, it was difficult to determine this question upon the affidavits, and it is not simple to determine it from the evidence comprising 250 pages, mostly devoted to that item. The owner has presented proof upon, and claims to have established, the following items of loss due to this proceeding:

| | | |
|---|---:|---:|
| 30 rental sites, at $40 | $1,200 | 00 |
| 20 trees removed | 600 | 00 |
| 31 trees which must be removed, at $30 (not counting the twelve trees which are of doubtful value) | 930 | 00 |
| 200 trees of diminished capital value at $15 | 3,000 | 00 |
| Additional cost of plowing | 40 | 00 |
| Additional cost of trimming | 60 | 00 |
| Loss on yield of apples | 2,470 | 80 |
| Total | $8,300 | 80 |

The petitioner produced an expert witness on the orchard whose figures were considerably lower than the figures given by the owner's witnesses, and of course otherwise contested the propriety of considering these items of damage.

The claim regarding the orchard arises this way:

After the institution of the proceeding by the service of petition and the filing of the *lis pendens*, the owner ceased to cultivate and care for the orchard in the usual manner. He claims that this was pursuant to the advice of the members of the park board, or some of them, which is denied on their part, but it would seem that it was only reasonable for him to follow that course. Obviously, a cultivated and sprayed, trimmed orchard was not a thing which petitioner desired as a part of its park, and when the proceeding was started in the late fall of 1931, the owner would naturally assume that it would be completed within a time which would render any work done on the orchard a waste, and for which he could not reasonably ask to be paid. That year having gone by, he was in the same position as to the following year. The natural result was a partial destruction of the orchard — that is, the deterioration that comes from want of care.

As to the loss of rents, it appears that this property, which was worth, concededly, $100,000 or more, and contained a hotel and divers and sundry buildings besides farm buildings, among other things, had on the lake front a site for cottages, which the owner had been accustomed to rent to persons who erected their own temporary cottages thereon, and the owner claims to have lost many of these tenants because of the institution of this proceeding and the chance that the tenants might have to remove before the season was over.

All of these items are complicated by another consideration, namely, that for some time prior to the commencement of this proceeding, there had been a general gossip that this property was to be taken for park purposes, and, in fact, the park commission had made a survey in the year 1926, and had recommended to the board of supervisors the taking of the property as early as 1927, and much evidence has been given about the conversations and negotiations between the owner and the members of the park board during that period, but I am of the opinion that whatever was done prior to the institution of the proceeding in November, 1931, cannot be taken into consideration in arriving at the damage suffered by the owner. I think, as claimed by the petitioner's counsel, that he should not have relied upon anything that was done prior to the commencement of the proceeding, and I think, contrary to the claim of the petitioner, that he was not obliged to pay any attention to

the gossip which was claimed to have disclosed intention of the county to discontinue the proceeding. In other words, I think the court in determining what, if anything, should be allowed him in consideration of a discontinuance, must be confined to the period covered by the actual proceeding itself — that is, from November 17, 1931, until the latter part of July, 1933. In so far as the owner proved a loss of rental of the hotel, it probably occurred outside the dates to which he is thus confined, and no claim is now made therefor. Thus confined, however, I think it cannot be said that the owner was not seriously damaged, although it is very difficult of precise assessment.

An additional question is presented at this time; that is, whether the court should not include in the expense of the landlord, and the petitioner should pay, the cost of counsel since the application for discontinuance, which the evidence shows to be worth approximately $1,000. While the owner is not without authority for such a demand (*Matter of Trustees of White Plains*, 65 App. Div. 417, 418), I am of the opinion that this should not be included. The fact that the owner has had large expense in establishing his right to have certain terms imposed in consideration of discontinuance, is only the burden that every man has to enforce his claims. It is a well-known fact that sometimes the cost of recovering a just debt exceeds the debt itself, but the law does not have a remedy for all the perversities of man. The terms imposed here do not, therefore, include any expense of counsel incurred after the application to discontinue was made, nor does it include any expense of counsel prior to the commencement of the proceeding. The rulings reserved upon the hearing are made in harmony with this opinion.

An order may enter, allowing a discontinuance of the proceeding, upon payment to the landowner of the sum of $5,150, in lieu whereof the motion to discontinue will be denied, with ten dollars costs and disbursements.