**KNOX COUNTY ex rel. Thomas H. SCHUMPERT**

v.

**UNION LIVESTOCK YARD, INC.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 21, 2001.

W. Richard Baker, Jr., Christopher J. Oldham, and Gerald L. Gulley, Jr., Knoxville, TN, for appellant, Union Livestock Yard, Inc.

David D. Creekmore, Deputy Law Director, Knoxville, TN, for appellee, Knox County ex rel. Thomas Schumpert.

## OPINION

SUSANO, J., delivered the opinion of the court, in which FRANKS and SWINEY, JJ., joined.

In the instant case, the trial court dismissed a condemnation petition filed by Knox County. The court then proceeded to award the defendant landowner $30,000 in expenses pursuant to the provisions of T.C.A. § 29–17–812. The landowner appeals, arguing that the trial court erred in failing to award all of its claimed expenses. The landowner also seeks attorney's fees and expenses related to this appeal. We affirm the trial court's judgment that the landowner is entitled to an award of expenses, but we find that the evidence preponderates in favor of a larger award. We also find that the landowner is entitled to its attorney's fees and expenses incurred as a result of this appeal. As modified, we affirm.

## I.

This condemnation proceeding was commenced when Knox County *ex rel.* Thomas H. Schumpert,[1] filed a petition in the trial court seeking to condemn property owned by the defendant, Union Livestock Yard, Inc.[2] Following a hearing, the court below found that the resolution passed by the Knox County Commission authorizing the subject condemnation was deficient. The court gave the County 45 days to correct the resolution. After the 45–day period had expired without the passage of a corrected resolution, the trial court entered an order dismissing the County's petition with prejudice. Thereafter, the defendant sought to recover its expenses, including attorney's fees, pursuant to T.C.A. § 29–17–812(b), which provides, in pertinent part, as follows:

> [t]he state court having jurisdiction of a proceeding initiated by any person, agency or other entity to acquire real property by condemnation shall tax the bill of costs prepared by the clerk against the condemner and shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for the owner's reasonable disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of condemnation proceedings, only if:
>
> (1) The final judgment is that the acquiring party cannot acquire the real property by condemnation; or
>
> (2) The proceeding is abandoned by the acquiring party.

T.C.A. § 29–17–812(b) (2000). In addition to seeking recovery of its expenses incurred as a direct result of the litigation instituted by the County, the landowner sought recovery of (1) fees charged by its

---

1. Mr. Schumpert is the Knox County Executive.

2. The condemnation petition initially named Ronald Steven Myers and George Myers, doing business as Union Livestock Yard, Inc., as defendants in this action. The County eventually took a voluntary nonsuit as to Ronald

Myers and George Myers individually, upon discovering that the subject property was in fact owned solely by Union Livestock Yard, Inc. All three defendants were represented by the same counsel throughout the course of these proceedings.

attorneys as a result of a chancery court lawsuit filed by it, prior to the condemnation action, seeking to challenge the legality of the condemnation resolution, and (2) fees charged by its attorneys as a result of discussions and meetings with the County Commission, both before the condemnation resolution was passed and during the 45-day period immediately preceding the dismissal of the petition. The trial court specifically refused to award any fees incurred in the chancery court litigation or in lobbying activities during the 45-day period but did permit partial recovery of fees incurred prior to the filing of the petition, upon finding that some of this work was directly related to the later-filed condemnation action. The landowner appeals, arguing that it is entitled to all of its claimed fees and that it is entitled to attorney's fees and expenses for this appeal. The County argues that an award of expenses pursuant to T.C.A. § 29–17–812 was not appropriate because, so the argument goes, the trial court's dismissal was not a decree finding that the County could not acquire the property, and, further, that there was no finding that the County had "abandoned" the condemnation action. In the alternative, the County argues that the trial court correctly excluded from the award any fees related to the landowner's chancery court litigation and its lobbying efforts before the County Commission.

II.

The landowner apparently became aware of the County's interest in acquiring its property in October, 1998, when committees of the Knox County Commission recommended the property's acquisition. Consequently, the landowner hired an attorney, John K. King, of the firm of Lewis, King, Krieg, Waldrop & Catron, P.C. Beginning in November, 1998, King and his firm researched the relevant legal issues, investigated traffic patterns, and met with members of the Knox County Commission and other County officials regarding the proposed acquisition. On December 21, 1998, the County Commission passed a resolution authorizing the appropriation of $350,000 for the acquisition of land and right-of-way access to provide a manner of ingress and egress to the Halls Convenience Center, a recycling and solid waste collection facility owned by the County. The resolution authorized the Knox County Executive to negotiate the purchase of an appropriate access to the convenience center. The resolution further authorized the County Executive to condemn the property necessary for such access if such purchase could not be effected within 90 days. The resolution does not specify the land to be acquired; it merely states that "the Knox County Department of Solid Waste has located certain property on Neal Drive that it has determined would be appropriate for this use." The minutes of the December 21, 1998, meeting indicate that the County was considering the acquisition of one of three parcels on Neal Drive, one of which was owned by the landowner, and that the resolution was broadly worded so it could be used to acquire any one of these parcels. Ultimately, however, it was the landowner's property that was selected for the project.

King was present at the December 21, 1998, County Commission meeting, and argued against the proposed resolution on behalf of his client. Despite his arguments, the resolution was adopted. Following its adoption, King continued to discuss the proposed acquisition with various County officials. On January 21, 1999, King filed a declaratory judgment action in the Knox County Chancery Court against the members of the Knox County Commission, seeking a declaration that the resolution was illegal, arbitrary and capricious and was not necessary for a public pur-

pose.[3] After filing the chancery court suit, King continued to represent the defendant in discussions with County officials.

On August 19, 1999, the County filed the subject condemnation petition in the Knox County Circuit Court. In response, King prepared and filed on the landowner's behalf a motion objecting to the County's right to take the subject property. The motion also sought to consolidate the condemnation action with the chancery court lawsuit. The motion for consolidation was withdrawn in November, 1999, when the landowner obtained new counsel, W. Richard Baker, Jr. and Christopher J. Oldham, of the firm of Baker, Gulley, Repass & Oldham, P.A. Baker and Oldham assumed the representation of the landowner in both the chancery court proceeding and the County's condemnation action.

The condemnation case proceeded to a hearing on May 26, 2000. At the conclusion of the hearing, the trial court found that the proposed taking was necessary for a public purpose and was not arbitrary or capricious. The trial court concluded, however, that the December 21, 1998, resolution was deficient in that it improperly delegated to the County Executive the power to condemn. Moreover, the trial court concluded that the resolution failed to sufficiently "describe what the legislative body found was reasonable and necessary and essential to achieve the purpose for which they were proceeding." The trial court then stated as follows:

> The Court is going to take this matter under advisement before issuing its formal order in this case, which means that the county is not going to get possession and title for a period of 45 days. If within that 45 days the county legislative body that's got all these records of all these hearings passes

another resolution in essence authorizing a specific right-of-way that they wish to acquire, based upon this record, the Court will allow that amendment and will appear with counsel at that time of [sic] whether it cures any deficiencies. At the end of 45 days, if the county legislative body has not specifically authorized a right-of-way that they wish to, or do not authorize for public purpose the acquisition of a specific right-of-way in the exercise of their legislative power—not the County Executive's—then the Court will enter [an order] dismissing the petition.

Following this hearing, attorneys Baker and Oldham initiated contacts with members of the County Commission in an effort to persuade them not to pass a corrected resolution. In addition to sending letters and making telephone calls, Baker and Oldham attended subcommittee meetings and met personally with members of the Commission. On June 26, 2000, the County Commission met and considered a revised resolution. It was defeated by virtue of a tie vote. The County subsequently filed a motion seeking an extension of time to allow the County Commission to convene again and reconsider the resolution. The record does not indicate that the trial court ever ruled on this motion; the County, however, has not raised the trial court's apparent failure to address its motion as an issue on this appeal.

On July 31, 2000, a judgment was entered dismissing the County's petition with prejudice. The County did not appeal this judgment. Thereafter, the landowner moved to recover its expenses, including attorney's fees, pursuant to T.C.A. § 29–17–812. The landowner sought to recover

---

3. The declaratory judgment action was filed on behalf of the landowner, along with its shareholders, Ronald Steven Myers and George Myers.

$7,884 for 48.1 hours of work performed by attorney King and his firm from November, 1998, until September, 1999. The landowner also sought to recover $41,101.20 for 317.9 hours of work performed by attorneys Baker and Oldham from October, 1999, to August 18, 2000. Each attorney submitted an affidavit and a detailed billing summary of the hours claimed.

Following a hearing on the issue of the landowner's expenses, the trial court opined from the bench regarding the fees that it found to be recoverable under T.C.A. § 29-17-812. Specifically, it found that the landowner was not entitled to recover attorney's fees charged by either King, Baker, or Oldham in connection with the Chancery Court litigation:

> [T]he Court thinks the intent of this statute is clear that where in the end a Court's determined that an action for condemnation by an entity with the power of eminent domain was either illegal, arbitrary, or capricious, that the property owner should be reimbursed what the property owner—cost the property owner to defend that action, to put them back so that the individual property owner doesn't lose anything by defending the rights against what's an illegal, arbitrary, or capricious act of a body with the power of eminent domain, but with that, the Court's got to find the fees and expenses recovered are reasonable expenses that should have been incurred.
>
> Although I can understand from a lawyer's standpoint the reasoning behind the Chancery Court action, I don't think that was the intent here in the statute. I think all that's intended here is defending the condemnation itself. I can understand why that maybe was done, but I don't think that falls within the purview of what

the statute intended to do. But I can understand why some of the legal work on that, preparation, research, might well—time would have been spent here had that action never been filed, but the Court's got to determine what's reasonable.

The trial court found that all of the expenses claimed by King after the County filed its condemnation petition on August 19, 1999, were "obviously" related to the condemnation action and thus recoverable by the landowner. The court awarded the landowner a recovery of five additional hours of King's time for unspecified legal work performed prior to the filing of the condemnation action, finding that this work was "reasonably relate[d] to the condemnation case."

As to the charges of Baker and Oldham, the trial court found that "there are a lot of things in [the billing summary] that are not related to this action." In addition to denying the landowner recovery for any fees related to the chancery court litigation, the trial court denied the landowner a recovery of attorney's fees incurred in the 45 days after the May 26, 2000, court hearing, when attorneys Baker and Oldham lobbied various County Commission members in an attempt to defeat the passage of the amended resolution. The trial court predicated its ruling on the following rationale:

> [a]ny action or any expenses incurred by the property owner after the Court's decision of May 20th [sic] is not reasonably related to defending the condemnation—they won the condemnation action at that point. The County had a chance to correct, which they did not do. And that's a matter of the property owner incurring expenses for his own best interests, not defending the condemnation action.

The trial court asked Baker and Oldham to provide it with a more detailed billing sum-

mary that would delineate which fees were related to each activity, *i.e.,* the chancery court case, the post-May 26, 2000, lobbying efforts, and the circuit court action. Baker subsequently submitted a supplemental affidavit, in which he asserted that 13.1 hours of the total hours claimed were related to the chancery court proceeding; 247.5 hours were directly related to the County's condemnation proceeding; 19.3 hours were expended in matters pertaining to the County Commission following the May 26, 2000, hearing; and 4 hours were spent in preparation for the hearing on the issue of attorney's fees. Based upon this information, the trial court found at a subsequent hearing that of the $41,101.20 [4] claimed by Baker and Oldham, $35,000 was reasonably related to the condemnation lawsuit. The court concluded, however, upon "considering everything," that the landowner was entitled to an award of $25,000 for the work performed by Baker and Oldham and $5,000 for work performed by King.

### III.

■ The County contends that the defendant is not entitled to an award of fees and expenses under the language of T.C.A. § 29–17–812. We disagree.

■ T.C.A. § 29–17–812(b)(2) provides that a property owner may recover its "reasonable disbursements and expenses ... incurred because of condemnation proceedings ... if ... [t]he proceeding is abandoned by the acquiring party." "Abandonment" is defined as "[t]he surrender, relinquishment, disclaimer, or cession of property or of rights." *Black's*

*Law Dictionary* 2 (6th ed. 1990). This Court has held that to constitute an abandonment under this section, there must be "a voluntary act by the condemning authority." *Metropolitan Gov't of Nashville and Davidson County v. Denson,* C/A No. 01A01–005–CV–00174, 1990 WL 154646, at *9 (Tenn.Ct.App.M.S., filed October 17, 1990) *(perm. app. denied* January 28, 1991). In the instant case, the County was given 45 days to correct its defective resolution and thus keep this proceeding alive. It failed to do so. By not passing a corrected resolution, the County, in effect, voluntarily relinquished its right to maintain the instant condemnation proceeding. Accordingly, we find that the County abandoned this specific proceeding, thereby entitling the landowner to recover its "reasonable disbursements and expenses." [5]

We recognize that it can be argued that the facts of this case do not necessarily show that the County had lost interest in condemning the landowner's property; but that is not the test. The issue is whether the County "abandoned" this particular "proceeding." It clearly did when it failed to take the curative measures outlined by the trial court.

### IV.

Having determined that the County abandoned the instant proceeding, we must now determine whether the trial court erred in setting the amount of the landowner's "reasonable disbursements and expenses." The trial court limited the award of attorney's fees to the amount of fees that it found to be "directly related" to the County's filing of the condemnation petition. It specifically found that fees

---

**4.** This amount does not include $562.50 in fees relating to the hearing on attorney's fees.

**5.** The trial court's remarks from the bench indicate that it awarded the defendant its fees and expenses pursuant to T.C.A. § 29–17–812(b)(1) rather than subsection (b)(2), the

basis of this Court's decision. However, this Court "can affirm a trial court's judgment if the result is correct even though we disagree with the lower court's reasoning." *Murvin v. Cofer,* 968 S.W.2d 304, 311 (Tenn.Ct.App. 1997).

related to the landowner's filing of the chancery court lawsuit and the landowner's lobbying activities after the May 26, 2000, hearing were not activities directly related to the condemnation suit and thus denied recovery of the fees and expenses related to those activities.

■ The landowner argues that, in denying a recovery for fees and expenses related to the chancery court litigation, the trial court construed T.C.A. § 29–17–812 too narrowly. It argues that "condemnation proceedings" as contemplated by the statute begin when a governmental entity takes formal steps to initiate a taking. It further contends that such "formal steps" occurred in the instant case when committees of the Knox County Commission recommended the acquisition of the landowner's property in October, 1998. At the very latest, it argues, the "condemnation proceedings" began on December 21, 1998, with the passage of the County Commission's resolution. Because the chancery court litigation was brought to challenge the legality of that resolution, the landowner argues that those fees and expenses are related to the "condemnation proceedings" and are thus recoverable.

The landowner's argument, however, begs the question. Whether the "condemnation proceedings" began with the passage of the resolution or the filing of the condemnation petition, the issue is whether the disbursements and expenses claimed by the defendant are "reasonable" and "incurred because of condemnation proceedings." *See* T.C.A. § 29–17–812(b) ("the state court . . . shall award the owner . . . [its] *reasonable* disbursements and expenses") (emphasis added). We find that the expenses incurred because of the chancery court litigation do not fit within the language of the statute because those expenses were not essential to the defense of the County's efforts to condemn the landowner's property. The allegations in

the chancery court case to the effect that the proposed condemnation was illegal, arbitrary and capricious, and not necessary for a public purpose are all issues that could have been, and in fact were, properly raised as defenses in the condemnation action. Thus, the trial court did not err in concluding that the expenses incurred because of this unnecessary litigation were not "reasonable disbursements and expenses . . . incurred because of condemnation proceedings."

■ We do find, however, that the trial court erred in excluding from the award the expenses incurred because of the "legislative activities" of the landowner's attorneys following the May 26, 2000, hearing. Contrary to the trial court's assertion that the landowner had "won the condemnation at that point," the condemnation proceeding was far from over on May 26, 2000. Indeed, the trial court's message was clear: it intended to "enter an order within 45 days *one way or the other.* " (Emphasis added). Thus, had the County Commission passed a corrected resolution within those 45 days, it is clear that the court would have allowed the condemnation to proceed. After the May 26, 2000, hearing, the outcome of the condemnation proceeding depended entirely upon the actions of the County Commission. As a result, the landowner's attorneys began contacting members of the Commission in an effort to dissuade them from voting for a corrected resolution that, if curative of the deficiencies cited by the trial court, would have prompted a ruling in favor of the County. The corrected resolution failed because of a tie vote; whether that resulted solely from the lobbying efforts of the landowner's attorneys, we cannot say. However, we can say that this lobbying was most certainly *related* to its successful defense of the condemnation action. We therefore find that the fees incurred because of the attorneys' lobbying are recoverable as "reasonable disbursements and expenses."

## V.

■ Although we find that the landowner is entitled to recover fees related to the lobbying activities on its behalf, it remains to be seen whether the overall award of $30,000 was sufficient. T.C.A. § 29–17–812(b) provides that the prevailing landowner shall be awarded a sum that "will *in the opinion of the court* reimburse such owner for the owner's reasonable disbursements and expenses. . . ." (Emphasis added). In interpreting nearly identical provisions, other jurisdictions have found that this language vests the trial court with wide discretion in determining the amount to be awarded. *See, e.g., Tennessee Gas Pipeline Co. v. 104 Acres of Land,* 32 F.3d 632, 634 (1st Cir.1994); *City of Hammond v. Marina Entertainment Complex, Inc.,* 681 N.E.2d 1139, 1144 (Ind.Ct.App.1997). We must therefore determine whether the trial court abused its discretion in its award of attorney's fees.

■ The trial court awarded the landowner $5,000 for the work performed by King that was, in the opinion of the court, directly related to the County's condemnation action. We do not find that the evidence preponderates against this award; hence, we do not find that the trial court abused its discretion in awarding this amount. Upon reviewing King's billing summary, we find that such an award is reasonable compensation for the work King performed, *exclusive of the time spent on the chancery court litigation.*

The trial court found that $35,000 of the fees claimed by Baker and Oldham were reasonably related to the condemnation action; however, it awarded the defendant only $25,000 for their work. In view of the trial court's specific finding that $35,000 of the attorneys' work was reasonably related

to this case, we find error in the trial court's award of only $25,000. For the reasons set forth in this opinion, we find that the evidence preponderates in favor of a finding that the landowner is entitled to recover the charges and expenses of Baker and Oldham, with the exception of those fees related to the litigation in the chancery court. Therefore, the landowner is entitled to the total Baker–Oldham charges of $41,663.70,[6] less the amount related to the chancery court litigation. According to Baker's supplemental affidavit, Baker and Oldham spent 13.1 hours on that litigation. Their billing records, however, indicate otherwise; a careful review of those records reveals that Baker and Oldham spent at least 29.2 hours related to that proceeding, which converts to charges of $3,818.75. Accordingly, we deduct this sum from $41,663.70, leaving a balance of $37,844.95 for the work performed by Baker and Oldham. Coupled with the award of $5,000 for King's services, this results in a judgment against the County of $42,844.95.

Our ruling with respect to the Baker–Oldham charges (not counting the fees incurred in the chancery court litigation, which we agree with the trial court should be disallowed, and the post-May 26, 2000, lobbying activities, which we have found should be allowed) is based in large measure upon the trial court's own predicate factual findings. That court opined as to those charges as follows:

> The Court finds that of the bills of Mr. Baker, Mr. Oldham, the sum of approximately $35,000 could be reasonably related under some argument to this lawsuit.

> \* \* \*

> So I find that $35,000 of [the Baker–Oldham charges] is related to this lawsuit.

---

6. This figure included $562.50 in fees related to the hearing on the landowner's expenses.

When the County attempted to argue the *reasonableness* of the charges, the trial court interrupted with the following comment:

> I had their time records and you-all filed nothing in opposition, either by someone else saying it was reasonable or not reasonable or that the hourly rate[7] was reasonable or not reasonable. The County filed nothing.

In other words, there was no proof that the services performed by Baker–Oldham with respect to the condemnation lawsuit were not reasonable and necessary in defense of the condemnation action nor was there any proof that their rates were unreasonable. We are left, as was the trial court, with the attorneys' unrefuted sworn testimony.

When the trial court's factual findings are coupled with its error of law regarding the post-May 26, 2000, lobbying efforts, we conclude that the trial court abused its discretion by reducing, without explanation, the Baker–Oldham fees found by it to be related to the condemnation litigation from \$35,000 to \$25,000. When the post-May 26, 2000, lobbying efforts are added back to the fees found to be reasonable by the trial court, we are left with our finding of \$37,844.95.

### VI.

■ Finally, the landowner argues that it is entitled under T.C.A. § 29–17–812 to its reasonable attorney's fees and expenses incurred on this appeal. We agree; this appeal is "clearly a part" of the condemnation proceeding. *See State Dep't of Transp. and Dev. v. Illinois Cent. Gulf R.R. Co.*, 464 So.2d 401, 404 (La.Ct.App. 1985). The landowner's appeal was essentially successful. The award of expenses

was increased approximately 43%. We therefore remand this case for a determination of an award of the reasonable fees and expenses that the landowner has incurred on this appeal.

### VII.

The judgment of the trial court is affirmed as modified by this opinion. This case is remanded for the entry of an order consistent with this opinion and for a determination of an award of attorney's fees and expenses incurred by the appellant on this appeal and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee.

---

7. Their hourly charge for in-court work was \$150 while their fee for out-of-court work was \$125.